**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **UNOWEB VIRTUAL, LLC,** <br><br> *Plaintiff,* <br><br> v. <br><br> **OPEN TEXT, INC.,** <br><br> *Defendant.* | **Civil Action No._____** <br><br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff UnoWeb Virtual, LLC ("UnoWeb" or "Plaintiff"), by and through its attorneys, brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 7,730,083 ("the '083 patent"). Defendant Open Text, Inc. ("Open Text" or "Defendant") infringes the '083 patent in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

### INTRODUCTION

1. Open Text, in an effort to expand its product base and profit from the use and sale of specific content management systems, including methods that were unknown prior to the development of the '083 patent, has undertaken to copy the technologies disclosed in the '083 patent.

2. John Almeida is the inventor of the '083 patent.[1] Mr. Almeida developed the technologies at issue in this case in response to his exposure to the unique problems that retailers and advertisers faced from the specific architecture of the internet.

3. UnoWeb is based in Plano, Texas. UnoWeb developed UnoWeb AdMind, UnoWeb WayVi, and UnoWeb OpenCommerce, and its technologies can be seen, in part, at www.unoweb.com and www.unowebdemo.com.

---

[1] John Almeida is the inventor of 16 issued U.S. patents, 38 published U.S. patent applications, and additional pending unpublished patent applications before the United States Patent and Trademark Office ("USPTO").

4. Mr. Almeida is the founder and owner[2] of UnoWeb and a resident of Plano, Texas. Mr. Almeida sought patent protection for his inventions. A software developer who moved to the United States from Brazil, Mr. Almeida worked on e-commerce applications in the first wave of internet businesses in the mid-1990s. Mr. Almeida worked for TradeYard.com[3] and Roidirect.com.[4] These early internet companies exposed Mr. Almeida to problems that were unique to content distribution and advertising on the internet.[5] Problems such as internet server resource allocation, third-party content integration on the World Wide Web, and internet advertising click-fraud were unique problems arising from the context of content distribution over a computer network and internet-based advertising.

5. In creating UnoWeb, Mr. Almeida developed inventions directed to content management. These inventions led to a number of patents, including the '083 patent, that disclose systems and methods for distributing and managing access to data where data is stored in multiple external servers or independent content hosts in the same server location. These content management patents address, among other things, the difficult problem of managing access to data supplied by third parties.

6. UnoWeb's patents and published patent applications have been cited in over 200 United States patents and published patent applications as prior art before the United States

---

[2] UnoWeb Virtual, LLC is owned by UnoWeb Holdings, LLC. Mr. Almeida owns over 90% of UnoWeb Holdings, LLC.

[3] *See* Colleen Benson, *People in Business*, SAN FRANCISCO CHRONICLE (May 8, 2000) (Describing TradeYard as an "Internet marketplace for used heavy equipment." Although common today TradeYard was introducing the novel idea of providing an internet distribution venue to regional brick and mortar stores); *see also Micro General Affiliate Escrow.com Announces Integration of Fully Functional Transaction Settlement Engine by B2B Exchanges*, Micro General Corporation Press Release (December 5, 2000).

[4] *See* Merrill Warkentin, BUSINESS TO BUSINESS ELECTRONIC COMMERCE: CHALLENGES AND SOLUTIONS AT 267 (2002) (Describing the ROIDIRECT.com solution as "such companies provide eServices such as payment processing, logistics, and site monitoring. Some vendors that provide such services are bccentral.com (from Microsoft.com), Webvision.com, Roidirect.com, dellworks.com, and Websphere from ibm.com.").

[5] *See e.g.*, U.S. Patent App. 2003/0120560, *Method for Creating and Maintaining WorldWide E-Commerce* (Filed December 20, 2001) ("At present, there are needs for easy and affordable worldwide e-commerce solutions where the seller can have their goods and services sold.").

Patent and Trademark Office.[6]  Companies whose patents and patent applications cite the UnoWeb patents include:

- eBay, Inc.
- Amazon.com, Inc.
- Adobe Systems, Inc.
- Microsoft Corporation
- International Business Machines Corporation
- Xerox Corporation
- AT&T Corporation
- Yahoo!, Inc.
- Facebook, Inc.
- Hewlett- Packard Development Company, L.P.
- Raytheon Company
- CBS Interactive, Inc.
- Apple, Inc.
- Demandware, Inc.
- Symantec Corporation
- Websense, Inc.
- Sony Corporation
- Panasonic Corporation
- Netapp, Inc.
- Vodafone Group PLC
- Google, Inc.
- Qualcomm, Inc.
- Alibaba Group Holding Limited
- Ericsson Television, Inc.

## THE PARTIES

**UNOWEB VIRTUAL, LLC**

7. UnoWeb is a small, Plano, Texas-based company.  UnoWeb developed information management solutions to allow companies and individuals to manage internet content, provide contextual internet advertising, and conduct internet-based social networking services.  UnoWeb depends on patent protection to effectively license its innovative technologies.  UnoWeb has secured licenses for its patents from a number of leading technology companies.

---

[6] The 200 forward citations to the UnoWeb patents do not include patent applications that were abandoned prior to publication in the face of the UnoWeb patents.

8.      John Almeida, the inventor of the '083 patent and owner of UnoWeb, resides in the Eastern District of Texas.  UnoWeb's principal place of business is located in the Eastern District of Texas at 5761 Robbie Road, #3403, Plano, Texas 75024.

9.      Open Text's sale and distribution of products and services that infringe the '083 patent has caused and continues to cause UnoWeb irreparable harm.

10.     As a result of Open Text's unlawful competition in the Eastern District of Texas and elsewhere in the United States, UnoWeb has lost sales and profits and suffered irreparable harm, including lost market share and goodwill.

**OPEN TEXT**

11.     Upon information and belief, Defendant Open Text is a corporation organized under the laws of Canada, with its principal place of business located at 275 Frank Tompa Drive, Waterloo, Ontario, N2L 0A1, Canada.

12.     Open Text's statements to the public, including statements made through websites (as well as press releases and other marketing materials) demonstrate that Open Text is actively involved in developing its worldwide business, including in Texas.  *See, e.g.*, https://www.opentext.com/who-we-are/office-locations.

13.     According to Open Text's website, Open Text offers infringing products for sale throughout the United States and Canada, including in the Eastern District of Texas, through various channels.  Open Text maintains extensive operations in Texas, including the following: an Austin, Texas office, located at 1301 S. Mopac Expressway, Suite 150, Austin, TX 78746; a Dallas, Texas office, located at 15725 Dallas Parkway, Two Addison Circle, Dallas, TX 75001; and a San Antonio, Texas office, located at 10537 Gulfdale Drive, San Antonio, TX 78216.  Open Text's infringing products use the same technology that is disclosed in the '083 patent.  Open Text offers its infringing products through its distribution channel, which includes numerous distribution points in Texas.  Open Text has affirmatively entered the Texas market with products that give rise to Unoweb's claims of infringement.  Further, Open Text advertises its infringing products throughout the Eastern District of Texas.

14. Open Text maintains highly interactive and commercial websites, accessible to residents of Texas and this judicial District, through which Open Text promotes its products and services, including products that infringe the '083 patent. The level of interactivity of Open Text's website rises to a level where establishing minimum contacts over Open Text would not offend traditional notions of fair play and substantial justice.

15. Open Text has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by residents of this District and/or incorporated into downstream products purchased by consumers in this District.

16. Because Open Text actively targets customers in the Eastern District of Texas and throughout the United States, Open Text's infringement adversely affects UnoWeb and John Almeida, UnoWeb's founder and owner, who lives and works in the Eastern District of Texas.

## JURISDICTION AND VENUE

17. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

18. Upon information and belief, this Court has personal jurisdiction over Open Text in this action because Open Text has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Open Text would not offend traditional notions of fair play and substantial justice. Defendant Open Text, directly and, upon information and belief, through intermediaries (including distributors, retailers, and/or others), has committed and continues to commit acts of infringement in this District by, among other things, making, using, offering to sell, and/or selling products and/or services that infringe the '083 patent.

19. Defendant Open Text, upon information and belief, has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

20. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Defendant Open Text has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

## TECHNOLOGY BACKGROUND

21. Advances in computational power and the explosive growth of the internet have led to the development of content management systems that aggregate data from hosts on a network.

22. Mr. Almeida invented ways of overcoming drawbacks arising from content management systems.  Mr. Almeida's inventions improved upon the then-available technology, enabled the production and generation of more effective communications, distribution of applications over a computer network, reduced costs, and resulted in improvements to content management systems.

23. The '083 patent teaches specific computer-based content management systems, including systems that use a virtual network resource infrastructure for hosting and managing heterogeneous data from multiple hosts.

24. Mr. Almeida disclosed his inventions to the public, had the claims in the '083 patent repeatedly scrutinized on grounds of eligibility, novelty, non-obviousness, written description, and enablement by examiners at the U.S. Patent Office, overcame prior art references through prosecution proceedings, paid and continues to pay filing and maintenance fees to the U.S. Patent Office, and was awarded the '083 patent.  Because of those actions, the public has benefitted from Mr. Almeida's disclosures, and each claim of the '083 patent is statutorily protected by a presumption of validity that can be rebutted only by clear and convincing evidence.

25. The examiners who issued the '083 patent examined claims in parent and related applications, and repeatedly cited many prior art references, before satisfying themselves that the claims of the '083 patent differed substantially from the paradigm of earlier technology.

26. During examination of the '083 patents, the U.S. Patent Office had access to and knowledge of the then-current state of the art and earlier technology. The materials cited on the face of the patent and considered by the examiners include U.S. patents and published applications, as well as foreign patent documents.

### 1. U.S. Patent No. 7,730,083

27. U.S. Patent No. 7,730,083 ("the '083 patent"), entitled *Method of Using a Code to Track User Access to Content*, was filed on October 31, 2007, and claims priority to December 20, 2001. UnoWeb is the owner by assignment of the '083 patent. A true and correct copy of the '083 patent is attached hereto as Exhibit A. The '083 patent claims specific methods for tracking user views across a plurality of content hosts using a surf code reference and providing users with access to a list of content they had previously viewed.

28. The '083 patent claims a technical solution to a problem unique to computer networks – tracking a user's access to content gathered from multiple hosts and providing the user with a list of content previously viewed by the user.

29. The '083 patent is directed to the tracking of user access to content aggregated from multiple hosts and enabling the display of previously accessed content to a user. To accomplish this object, the '083 patent proposed technological solutions, including the use of a surf code reference that enabled the tracking of a user as content from different hosts is accessed. The patent specification explains that a surf code reference "is used for automatically storing a reference for each information supplied to each client and it forms the surf user-list. Once the user requests his/her surf user-list, the server will use each surf code reference and create the surf user-list and sent it to the user. A surf user-list will only include information that was previously viewed by the user." '083 patent, col. 21:59-65.

30. The '083 patent addresses a problem faced by operators who had a need to track access to content that came from multiple hosts. Further, there was a need to allow users to access content that they had viewed even if the content had come from multiple hosts. The '083

patent teaches new technological solutions to these problems. The solutions include: (1) enabling users to access a virtual server providing a view of content supplied from multiple hosts,[7] (2) assigning a surf code reference to each of the pieces of content that are accessed by a user,[8] and (3) storing a user list comprising the surf code reference such that a user can subsequently access a list of the content they had accessed.

31. The '083 patent discloses methods that are necessarily rooted in computer technology and are directed to overcoming a problem specifically arising in the realm of computer networks. The need to track a user accessing content retrieved from various hosts presented a new challenge.

32. At the time of the inventions claimed in the '083 patent, processing, transmitting, and aggregating electronic data from various hosts and tracking users' access to specific pieces of content presented new and unique issues over the state of the art.

33. Although the methods taught in the '083 patent have been adopted by leading businesses today, at the time of invention, the technologies taught in the '083 patent claims were innovative and novel.

---

[7] The claims of the '083 patent are similar to those found to constitute patent eligible subject matter. *See, e.g., DDR Holdings v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014) (invention directed towards generating a composite web page that combined certain aspects of a host website with information from a third-party merchant was eligible for patenting because the invention addressed an important challenge – *i.e.*, retaining website visitors through the use of computer technology); *KlausTech, Inc. v. Admob, Inc.*, Case. No. 10-cv-05899, Dkt. No.145 at 5 (N.D. Cal. Aug. 31, 2015) (upholding the validity of an internet advertising patent that "employs a new approach to control and monitor the display of advertisement on Internet browsers and seeks to solve technical problems that do not exist in the conventional advertising realm"); *Mirror World Techs. LLC v. Apple Inc., et al.*, Case No. 13-cv-419, Dkt. No. 346 at 18 (E.D. Tex. July 7, 2015) (upholding the patent eligibility of claims where "the invention is a method whereby a computer system organizes every data unit that it receives or generates chronologically with time stamps").

[8] The '083 patent also is directed, at least in part, at generating specific data structures. The generation of specific data structures has been found to confer patent eligibility by various courts. *See e.g., Advanced Marketing Sys., LLC v. CVS Pharmacy, Inc.*, Case No. 15-cv-00134 Dkt. No. 77 at 10 (E.D. Tex. Nov. 19, 2015) (Order Adopted at Dkt. No. 95 January 25, 2016) (denying without prejudice Defendants' motion to dismiss patents directed to discount coupons: "The presence of these structures counsels away from summarily concluding that the asserted claims are directed to an abstract idea.").

34. Further, the '083 patent claims improve upon the functioning of a computer system by using a surf code reference to allow the granular identification of content accessed by a user.  The inventions disclosed in the '083 patent improve the functioning of a computer system by improving the security of the system and reducing the amount of data stored (and computer resources utilized).

35. One or more claims of the '083 patent teach the gathering of data from hosts to create a surf code reference.  The creation of a label such as a "surf code" has been found to confer patent eligibility by various courts.[9]

36. The '083 patent claims are not directed to a "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," "a building block of the modern economy," or the broad concept of "content management." Instead, they are concretely circumscribed by specific limitations.  For example, claim 8 of the '083 patent requires:

> A method for tracking the supplying of contents by a virtual network, the method comprising the steps of:
>
> permitting a user at a client to access a virtual server providing the virtual network, wherein such access enables the user to view multiple contents supplied by a different hosts in the virtual network, wherein the virtual server sends a request and receives data from the different hosts, and wherein the virtual server has all the required software and hardware to support the ability to virtually present the multiple contents;
>
> receiving a request from a user to create a user list of different contents viewed by the user;
>
> assigning a surf code reference to each of the contents viewed, the surf code reference comprising information that identifies the contents viewed;
>
> storing the user list comprising the surf code reference automatically within the virtual network for each content supplied to the user;

---

[9] *See e.g., Gonzalez v. InfoStream Group, Inc.*, Case. No. 2-14-cv-00906, Dkt. No. 160 at 7 (E.D. Tex. Feb. 6, 2016) (finding, with respect to steps for "'gathering' one type of data and 'producing' a 'label[,]'" that "'[g]athering' data may describe an abstract idea, but 'producing' a 'label' based on that data does not describe an abstract idea").

> permitting the user at the client to request the user-list from the virtual network;
>
> supplying from the virtual network the user-list to the user at the client; and,
>
> supplying a content to the user drawn from the user list.

37. The '083 patent does not preempt the field of content management systems, or prevent use of alternative content management systems that enable the viewing of previously accessed content. For example, the '083 patent includes inventive elements—embodied in specific claim limitations—that concretely circumscribe the patented invention and greatly limit its breadth. These inventive elements are not necessary or obvious tools for achieving content aggregation, and they ensure that the claims do not preempt other techniques for content management. Further, the twenty-two patents cited in the prosecution history include numerous systems that are not preempted by the claims of the '083 patent.

38. The '083 patent does not claim, or attempt to preempt, the performance of an abstract business practice using a conventional computer. Further, the claimed subject matter of the '083 patent is not a pre-existing but undiscovered algorithm.

39. One or more claims of the '083 patent require a specific configuration of electronic devices, a network configuration, and servers to retrieve hosted content and assign the content a surf code reference that is used to generate a list of accessed content. These are meaningful limitations that tie the claimed methods and systems to specific machines.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,730,083

40. UnoWeb references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

41. Open Text makes, uses, sells, and/or offers for sale in the United States products and/or services for content management.

42. Open Text makes, sells, offers to sell, imports, and/or uses the eDOCS product (the "Open Text '083 Product").

43. On information and belief, the Open Text '083 Product includes content management software that uses a method for using a code to track user access to content, assigning a surf code reference to each of the different contents viewed by a user, storing a user list based on the surf-code reference for each of the different contents, and enabling a user to access a user list identifying the previously viewed contents.

44. On information and belief, the Open Text '083 Product is available to businesses and individuals throughout the United States.

45. On information and belief, the Open Text '083 Product is provided to businesses and individuals located in the Eastern District of Texas.

46. On information and belief, Open Text has directly infringed and continues to directly infringe the '083 patent by, among other things, making, using, offering for sale, and/or selling products and/or services for content management, including but not limited to, the Open Text '083 Product, which includes infringing content management technologies.

47. By making, using, testing, offering for sale, and/or selling content management products and services, including but not limited to the Open Text '083 Product, Open Text has injured UnoWeb and is liable to UnoWeb for directly infringing one or more claims of the '083 patent, including at least claim 8, pursuant to 35 U.S.C. § 271(a).

48. On information and belief, Open Text also indirectly infringes the '083 patent by actively inducing infringement under 35 U.S.C. § 271(b), at least as of the date of service of this Complaint.

49. On information and belief, Open Text has had knowledge of the '083 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Open Text knew of the '083 patent and knew of its infringement, including by way of this lawsuit.

50. On information and belief, Open Text intended to induce patent infringement by third-party customers and users of the Open Text '083 Product and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement. Open Text specifically intended and was aware that the normal

and customary use of the accused products would infringe the '083 patent. Open Text performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '083 patent and with the knowledge that the induced acts would constitute infringement. For example, Open Text provides the Open Text '083 Product that has the capability of operating in a manner that infringes one or more of the claims of the '083 patent, including at least claim 8, and Open Text further provides documentation and training materials that cause customers and end users of the Open Text '083 Product to utilize the product in a manner that directly infringe one or more claims of the '083 patent. By providing instruction and training to customers and end-users on how to use the Open Text '083 Product in a manner that directly infringes one or more claims of the '083 patent, including at least claim 8, Open Text specifically intended to induce infringement of the '083 patent. On information and belief, Open Text engaged in such inducement to promote the sales of the Open Text '083 Products, *e.g.,* through Open Text user guides, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '083 patent. Accordingly, Open Text has induced and continues to induce users of the accused product to use the accused product in its ordinary and customary way to infringe the '083 patent, knowing that such use constitutes infringement of the '083 patent.

51. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '083 patent.

52. As a result of Open Text's infringement of the '083 patent, UnoWeb has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Open Text's infringement, but in no event less than a reasonable royalty for the use made of the invention by Open Text together with interest and costs as fixed by the Court, and UnoWeb will continue to suffer damages in the future unless Open Text's infringing activities are enjoined by this Court.

53. Unless a permanent injunction is issued enjoining Open Text and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '083 patent, UnoWeb will be greatly and irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff UnoWeb respectfully requests that this Court enter the following relief:

A.     A judgment in favor of Plaintiff UnoWeb that Open Text has infringed, either literally and/or under the doctrine of equivalents, the '083 patent;

B.     An award of damages resulting from Open Text's acts of infringement in accordance with 35 U.S.C. § 284;

C.     A permanent injunction enjoining Open Text and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with Open Text, from infringing the '083 patent;

D.     A judgment and order requiring Open Text to provide accountings and to pay supplemental damages to UnoWeb including, without limitation, prejudgment and post-judgment interest; and

E.     Any and all other relief to which UnoWeb may show itself to be entitled.

## **JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, UnoWeb requests a trial by jury of any issues so triable by right.

Dated:  January 10, 2019

Respectfully submitted,

/s/  *Eric J. Carsten*
Elizabeth L. DeRieux (TX Bar No. 05770585)
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: 903-236-9800
Facsimile: 903-236-8787
E-mail: ederieux@capshawlaw.com

Eric J. Carsten (CA SB No. 232494)
CARSTEN LAW PC
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025
Telephone: 424-273-4160
E-mail: ecarsten@carstenlaw.com

*Attorneys for UnoWeb Virtual, LLC*